PHILIP R. SELLINGER
United States Attorney
DAVID INKELES
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel.: (973) 645-2813
E-mail: david.inkeles@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROGER F. DURONIO, | HON. MADELINE COX ARLEO, U.S.D.J. |
| *Plaintiff*, | HON. EDWARD S. KIEL, U.S.M.J. |
| v. | Civil Action No. 23-1446 (MCA)(ESK) |
| KELLY PARKER, et al., | |
| *Defendants*. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

---

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
*Attorney for Defendant*

DAVID INKELES
Assistant United States Attorney

## **TABLE OF CONTENTS**

Introduction ................................................................................................. 1

Background ................................................................................................. 2

    I.     Duronio's Criminal Conviction and Restitution Order ............................... 2

    II.    Prior Litigation Related to Duronio's Conviction and Restitution Order ... 2

    III.   The Allegation in the Complaint ............................................................... 3

    IV.   Statutory and Regulatory Framework: Treasure Offset Program ............. 4

Discussion .................................................................................................. 7

    I.     The *Bivens* Claims are Subject to Dismissal ............................................ 7

        A.  Duronio's Claims Would Require an Impermissible Extension of the *Bivens* Remedy ..................................................................................... 7

            1.   Duronio Fail to Meet the Demanding Test to Imply a *Bivens* Remedy ........................................................................................... 8

                a.  This Case Presents a New Context .................................... 9

                b.  Special Factors Counsel Against Recognizing a Bivens Remedy ........................................................................... 10

        B.  Qualifies Immunity is an Independent Bar to Duronio's Claims ........ 14

    II.    Any Official-Capacity Claims Should Also be Dismissed ......................... 18

        A.  The United States Has Not Waived Sovereign Immunity for Constitutional Torts ........................................................................... 18

        B.  The Court Should Dismiss Any Official-Capacity Claims Seeking Equitable Relief ................................................................................ 18

            1.   Any Claims Based on Treasury's Role in Administering Duronio's Debt Are Barred by 31 U.S.C. § 3716 ..................... 19

            2.   Any Claims Based on the Department of Justice's Role in Administering Duronio's Debt Likewise Fail .......................... 20

                a.  Duronio Failed to Exhaust his Administrative Remedies ........................................................................ 20

                b.  Failure to Allege a Constitutional Violation .................... 22

Conclusion ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Argueta v. U.S. Immigration & Customs Enforcement,*
    643 F.3d 60 (3d Cir. 2011) .................................................................. 15, 16

*Ashcroft v. Iqbal,*
    556 U.S. ....................................................................................................15-17

*Balice v. United States,*
    763 F. App'x 154 (3d Cir. 2019) ................................................................ 18

*Bistrian v. Levi,*
    912 F.3d 79 (3d Cir. 2018) ............................................................................ 8

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971) ....................................................................................... 7

*Blanchette v. Devos,*
    2020 WL 5642275 (D.D.C. Sept. 22. 2020) .............................................. 23

*Brian B. ex rel. Lois B. v. Com. Of Pennsylvania Dep't of Educ.,*
    230 F.3d 582 (3d Cir. 2000)........................................................................ 24

*Brown v. Montoya,*
    662 F.3d 1152 (10th Cir. 2011) .................................................................. 19

*Bush v. Lucas,*
    462 U.S. 367 (1983) ..................................................................................... 11

*Carlson v. Green,*
    446 U.S. 14 (1980) ......................................................................................... 7

*Chambers v. Berryhill,*
    2020 WL 5099829 (N.D. Tex. Aug. 12, 2020) ......................................... 20

*Chappell v. Wallace,*
    462 U.S. 296 (1983) ..................................................................................... 12

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ..................................................................................... 17

*Cleveland v. United States,*
    No. 13-cv-281, 2020 WL 3976940 (M.D. Pa. July 14, 2020) .................................... 22

*Community Mental Health Servs. v. Mental Health and Recovery Bd.,*
    150 F. App'x 389 (6th Cir. 2005).................................................................... 19

*Davis v. Passman,*
    442 U.S. 228 (1979) .................................................................................. 7, 10

*District of Columbia v. Wesby,*
    583 U.S. 48 (2018) ................................................................................ 15, 17

*Duronio v. Gonzales,*
    No. 07-169J, 2008 WL 768726 (W.D. Pa. Mar. 20, 2008) ......................................... 3

*Duronio v. United States,*
    No. 10-1574, 2012 WL 78201 (D.N.J. Jan. 10, 2012)............................................. 2

*Duronio v. Werlinger,*
    56 F. App'x  (3d Cir. 2011) ........................................................................ 2

*Duronio v. Werlinger,*
    No. 09-cv-289, 2011 WL 8582709 (W.D. Pa. Feb. 22, 2011) ................................... 2

*Duronio v. Werlinger,*
    454 F. App'x................................................................................................. 2, 12

*Egbert v. Boule,*
    596 U.S. 482 (2022) ........................................................................... passim

*FDIC v. Meyer,*
    510 U.S. 471 (1994) ................................................................................ 18

*Feit v. Ward,*
    886 F.2d 848 (7th Cir. 1989) ...................................................................... 19

*Hackworth v. Kansas City Veterans Admin. Med. Ctr.,*
    2015 WL 506245 (W.D. Mo. Feb. 6, 2015)............................................................ 23

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................ 14

*Hernandez v. Fulwood,*
    No. 23-cv-46, 2023 WL 1993673 (E.D. Pa. Feb. 13, 2023) ..................................... 12

*Hernández v. Mesa*,
  140 S. Ct. 735 (2020) ...................................................................... 4, 8, 13

*Hernández v. Mesa*,
  582 U.S. 548 (2017) ............................................................................. 8

*Higazy v. Templeton*,
  505 F.3d 161 (2d Cir. 2007) ................................................................ 19

*HIRA Educational Servs. v. Augustine*,
  991 F.3d 180 (3d Cir. 2021) ................................................................ 17

*Hughes v. United States*,
  No. 14-998, 2015 WL 4477961 (E.D. La. July 22, 2015) ........................ 20

*Hurd v. United States Postal Serv.*,
  No. 20-cv-394, 2021 WL 1721637 (D. Neb. Apr. 30, 2021) ..................... 21

*Johnson v. Dep't of Treasury*,
  300 F. App'x 860 (11th Cir. 2008) .................................................... 19, 20

*King v. Ponce*,
  No. 21-5628, 2023 WL 8253060 (D.N.J. Nov. 29, 2023) ......................... 10

*Kirby v. City of Elizabeth*,
  388 F.3d 440 (4th Cir. 2004) .............................................................. 19

*Lepelletier v. U.S. Dep't of Educ.*,
  No. 09-1119, 2009 WL 4840153 (D.D.C. Dec. 14, 2009) ......................... 20

*Lewal v. Ali*,
  289 F. App'x 515 (3d Cir.) ................................................................. 18

*Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*,
  881 F.3d 912 (D.C. Cir. 2018) ............................................................ 13

*Lima v. Dep't of Educ.*,
  374 F.3d 1122 (9th Cir. 2020) ............................................................ 22

*Lockhart v. United States*,
  546 U.S. 142 (2005) ............................................................................. 5

*Maehr v. Dep't of State,*
    2020 WL 967754 (D. Colo. Feb. 28, 2020) ............................................ 24

*McCarty v. Astrue,*
    505 F. Supp. 2d 624 (N.D. Cal. 2007) .................................................... 23

*Ministerio Roca Solida v. McKelvey,*
    820 F.3d 1090 (9th Cir. 2016) ................................................................ 19

*Omegbu v. Dep't of Treasury,*
    118 F. App'x 989 (7th Cir. 2004) ........................................................... 22

*Pahls v. Thomas,*
    718 F.3d 1210 (10th Cir. 2013) .............................................................. 16

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) ................................................................... 2

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) .................................................................... 4, 10-12

*Scott v. Flowers,*
    910 F.2d 201 (5th Cir. 1990) .................................................................. 19

*Segal v. C.I.R.,*
    177 F. App'x 29 (11th Cir. 2006) ........................................................... 19

*Shilkas v. Dep't of Educ.,*
    2013 WL 2149752 (D. Md. May 15, 2013) ............................................. 23

*Silbey v. Dep't of Educ.,*
    913 F. Supp. 1181 (N.D. Ill. 1995) ........................................................ 24

*Spencer v. GSA,*
    No. 15-4813, 2015 WL 5565812 (D.N.J. Sept. 21, 2015) ........................ 22

*Stradford v. Sec'y Penn. Dep't of Corr.,*
    53 F.4th 67 (3d Cir. 2022) ..................................................................... 23

*Tavares v. United States,*
    No. 13-cv-1654, 2014 WL 4351532 .................................................. 19, 20

*United States v. Beulke,*
    892 F. Supp. 2d 1176 (D.S.D. 2012) ...................................................... 21

*United States v. Duronio,*
No. 06-5116, 2009 WL 294377 (3d Cir. Feb. 9, 2009) ............................................ 2

*United States v. Harrison,*
No. 94-cr-428, 2007 WL 2332662 (N.D. Tex. Aug. 16, 2007) ................................. 21

*United States v. James Daniel Good Real Prop.,*
510 U.S. 43 (1993) ................................................................................................ 16

*United States v. $7,877.61 United States Currency,*
2016 WL 5078380 (W.D.N.Y. Sept. 20, 2016) ...................................................... 20

*Velazquez v. Zickefoose,*
No. 11-cv-2459, 2014 WL 6611058 (D.N.J. Nov. 21, 2014) ................................... 15

*Walker v. United States,*
No. 3:13-cv-205, 2014 WL 2505669 (M.D. Pa. June 3, 2014) ................................ 21

*Wilkie v. Robbins,*
551 U.S. 537 (2007) ..................................................................................... 8, 11, 14

*Woodford v. Ngo,*
584 U.S. 81 (2006) ................................................................................................ 21

*Xi v. Haugen,*
68 F.4th 824 (3d Cir. 2023) ........................................................................... passim

*Ziglar v. Abbasi,*
582 U.S. 120 (2017) ....................................................................................... passim

**<u>Statutes</u>**

5 U.S.C. § 702.......................................................................................................... 12
5 U.S.C. § 706.......................................................................................................... 12
18 U.S.C. § 3612(c)................................................................................................... 13
18 U.S.C. § 3613(a) .................................................................................................. 13
18 U.S.C. § 3613(c)................................................................................................... 13
18 U.S.C. § 3613(f) ................................................................................................... 13
18 U.S.C. § 3664....................................................................................................... 13
18 U.S.C. § 3771(a)(6).............................................................................................. 13
18 U.S.C. § 3771(b)(1).............................................................................................. 13
18 U.S.C. § 3771(d) .................................................................................................. 13
26 U.S.C. § 6402(d) .................................................................................................... 5

28 U.S.C. § 2241 ................................................................................................................ 12
31 U.S.C. § 3701(b)(1) .......................................................................................................... 4
31 U.S.C. § 3711(a)(1) ........................................................................................................... 4
31 U.S.C. § 3716 .................................................................................................................. 19
31 U.S.C. § 3716(a) ........................................................................................................... 4, 5
31 U.S.C. § 3716(a)(1) ........................................................................................................... 6
31 U.S.C. § 3716(a)(2) ........................................................................................................... 6
31 U.S.C. § 3716(a)(3) ........................................................................................................... 6
31 U.S.C. § 3716(a)(4) ........................................................................................................... 6
31 U.S.C. § 3716(c)(1) ........................................................................................................... 5
31 U.S.C. § 3716(c)(1)(a) ..................................................................................................... 20
31 U.S.C. § 3716(c)(2)(A) .................................................................................................... 19
31 U.S.C. § 3716(c)(7) ........................................................................................................... 6
31 U.S.C. § 3716(c)(6) ........................................................................................................... 5
31 U.S.C. § 3716(c)(6)(A) ...................................................................................................... 6
31 U.S.C. § 3720A(a) ......................................................................................................... 5, 6
31 U.S.C. § 3720A(a)-(b) ....................................................................................................... 4
31 U.S.C. § 3720A(b)(1) ........................................................................................................ 6
31 U.S.C. § 3720A(b)(2)-(3) .................................................................................................. 6
31 U.S.C. § 3720A(c) ............................................................................................................. 5

## Regulations

28 C.F.R. § 11.9 .................................................................................................................... 5
28 C.F.R. § 11.9(a) ........................................................................................................... 4, 11
28 C.F.R. § 11.9(c)(1) ............................................................................................................ 6
28 C.F.R. § 11.9(c)(2) ............................................................................................................ 6
28 C.F.R. § 11.9(c)(3) ............................................................................................................ 6
28 C.F.R. § 11.9(c)(4) ............................................................................................................ 6
31 C.F.R. § 285 ...................................................................................................................... 4
31 C.F.R. § 285.4(c) ......................................................................................................... 5, 20
31 C.F.R. § 285.4(c)-(h) ......................................................................................................... 5
31 C.F.R. § 285.4(d) ......................................................................................................... 5, 6
31 C.F.R. § 285.4(f)(1) ........................................................................................................... 6
31 C.F.R. § 285.4(f)(2) ........................................................................................................... 6
31 C.F.R. § 285.5(a)(1) ........................................................................................................... 5
31 C.F.R. § 285.2(b)(2) ........................................................................................................... 5
31 C.F.R. § 285.5(c) ............................................................................................................... 5
31 C.F.R. § 285.5(c)(2) ........................................................................................................... 5
31 C.F.R. § 285.5(d) ............................................................................................................... 5
31 C.F.R. § 285.5(d)(6) ........................................................................................................... 5
31 C.F.R. § 285.5(d)(6)(ii)(A) ................................................................................................ 6
31 C.F.R. § 285.5(d)(6)(ii)(B) ................................................................................................ 6
31 C.F.R. § 285.5(d)(6)(ii)(C) ................................................................................................ 6

31 C.F.R. § 285.5(d)(6)(ii)(D) ........................................................................ 6

31 C.F.R. § 285.5(f)-(j) .................................................................................. 5

34 C.F.R. § 30.22(b) ...................................................................................... 6

34 C.F.R. § 30.22(b)(3)(i) .............................................................................. 6

34 C.F.R. § 30.22(b)(3)(ii) ............................................................................. 6

34 C.F.R. § 30.22(b)(3)(iii) ............................................................................ 6

## __INTRODUCTION__

This lawsuit concerns the enforcement of a restitution order against Plaintiff Roger F. Duronio and the Department of Justice's enrollment of Mr. Duronio into the Treasury Offset Program ("TOP") when he stopped making monthly payments on his debt. Duronio, proceeding *pro se*, sues several federal officials for alleged due process and equal protection violations, claiming that they arbitrarily altered his restitution payments and wrongfully withheld his Social Security benefits. Liberally construed, the Complaint appears to assert *Bivens* claims against the United States Attorney for the District of New Jersey, Philip R. Sellinger; Supervisory Paralegal Specialist Robin Brown and Paralegal Specialist Kelly Parker of the U.S. Attorney's Office Financial Litigation Unit; and the Treasurer of the United States, Marilyn Malerba. Duronio also purports to bring official-capacity claims, seeking damages as well as equitable relief, based on these allegations.

Duronio's claims are all subject to dismissal. As to the *Bivens* claims, Duronio seeks to extend an implied damages remedy under the Constitution to a new context but cannot meet the demanding test required before courts may engage in that disfavored judicial activity. He likewise fails to overcome qualified immunity. And to the extent Duronio seeks damages from the United States for alleged due process or equal protection violations, sovereign immunity bars those claims. Any official-capacity claims for equitable relief are similarly deficient—whether because they are barred by statute, were not administratively exhausted, or fail to state a claim. The Court should dismiss the Complaint in its entirety.

## BACKGROUND[1]

### I.    Duronio's Criminal Conviction and Restitution Order

On July 19, 2006, a jury in this District found Duronio guilty on securities and computer fraud charges.  *See United States v. Duronio*, No. 02-cr-933 (JLL), ECF No. 114-15. On December 13, 2006, Judge Jose Linares sentenced Duronio to 97 months in prison, followed by three years of supervised release, and ordered Duronio to pay $3,162,376.00 in restitution.  *Id.* at ECF Nos. 133, 135.  The Restitution and Forfeiture Order required Duronio to begin restitution payments "immediately," and "[i]n the event the entire restitution is not paid prior to the commencement of [supervised release]," to make monthly payments of at least $200 per month beginning 30 days after his release from prison.  *Id.* at ECF No. 135, at 5.

### II.    Prior Litigation Related to Duronio's Conviction and Restitution Order

Duronio's conviction was affirmed on appeal, *see United States v. Duronio*, No. 06-5116, 2009 WL 294377 (3d Cir. Feb. 9, 2009), and courts have repeatedly rejected his applications for post-conviction relief, *see Duronio v. United States*, No. 10-1574, 2012 WL 78201 (D.N.J. Jan. 10, 2012); *see also Duronio v. Werlinger*, No. 09-cv-289, 2011 WL 8582709 (W.D. Pa. Feb. 22, 2011), *report and recommendation adopted Duronio v. Yost*, 09-cv-289, ECF No. 11 (Mar. 4, 2011), *aff'd Duronio v. Werlinger*, 56

---

[1] This background section is based on the allegations in the Complaint and public information that the Court may consider at the motion to dismiss stage.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  In the event this case were to proceed to summary judgment, Defendants would introduce evidence to show that they acted appropriately, and in accordance with the governing law, at all times relevant to this lawsuit.

F. App'x 71 (3d Cir. 2011). One such petition challenged the alleged "unlawful modification" of the restitution order. *See Werlinger*, 454 F. App'x at 73. Another lawsuit—a *Bivens* action—claimed Bureau of Prisons ("BOP") officials coerced him into participating in the BOP's Inmate Financial Responsibility Program (and challenged the Program as unconstitutional). *Duronio v. Gonzales*, No. 07-169J, 2008 WL 768726 (W.D. Pa. Mar. 20, 2008), *aff'd* 293 F. App'x 155 (3d Cir. 2008).

## III.    The Allegations in the Complaint

On March 13, 2023, Duronio filed the instant *pro se* action, the latest in what appears to be an ongoing campaign to challenge the restitution order entered in 2006. *See* ECF No. 1, Complaint ("Compl.").[2] Rather than sue BOP officials, though, he now names two employees from the U.S. Attorney's Office for the District of New Jersey's Financial Litigation Unit—Paralegal Specialist Kelly Parker and Supervisory Paralegal Specialist Robin Brown—along with the current United States Attorney, Philip R. Sellinger, and the Treasurer of the United States, Marilyn Malerba. According to Duronio, Parker and Brown, along with Malerba, "arbitrarily altered" his restitution payments, made (unspecified) threats in "retaliation for non-payment, [and] directed the [U.S. Department of the Treasury to] take money from [his] Social Security payments" without a hearing. *Id*. at 4-5. Duronio claims he was denied "due process and equal protection," and requests monetary and equitable relief. *Id*.[3]

---

[2] For ease of reference, we refer to the page numbers stamped on the Court's e-filing system (*i.e.*, pages one through eight) when citing the Complaint.

[3] Although the form *pro se* complaint appears to name United States Attorney Sellinger, Paralegal Specialist Parker, Supervisory Paralegal Specialist Brown, and

## IV.    Statutory and Regulatory Framework: Treasury Offset Program[4]

The Debt Collection Improvement Act requires federal agencies to "try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency." 31 U.S.C. § 3711(a)(1). The statute defines the term "claim" to include "any amount of funds or property determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency." *Id.* at § 3701(b)(1). Federal agencies, like the Department of Justice, are statutorily authorized (subject to certain procedural requirements, discussed below) to collect delinquent debts owed through administrative offsets. *See* 31 U.S.C. §§ 3716(a), 3720A(a)-(b); 31 C.F.R. part 285, subpart A; *see also* 28 C.F.R. § 11.9(a) (regulations governing DOJ-specific offsets).

The Debt Collection Improvement Act further mandates that federal agencies "shall" refer delinquent nontax debts to the U.S. Department of the Treasury

---

Treasurer Malerba in their "official" capacities, *see* Compl., at 2-3, Duronio asserts constitutional claims for damages against them, *id.*, so we have construed the Complaint as attempting to bring *Bivens* claims against these Defendants in their individual capacities. We construe the Complaint as asserting only official-capacity claims, however, as to President Biden and Attorney General Garland. Unlike with the individual-capacity defendants, the President and Attorney General are named solely in the caption of the Complaint. They are not included in the numbered list of defendants, *see id.* at 2-3, and the body of the Complaint does not include any allegations against them. Accordingly, this motion addresses both individual and official capacity claims, all of which, as discussed below, are subject to dismissal.

[4] The question of whether to recognize a *Bivens* remedy is informed by a "survey of what Congress has done in statutes addressing" the context at issue, *Hernández v. Mesa*, 140 S. Ct. 735, 747 (2020), which, in this case, involves the "administrative structure and procedures," *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988), governing the Treasury Offset Program.

("Treasury") for collection through offsets of federal and state payments (including, as relevant here, Social Security benefits).  *See* 31 U.S.C. §§ 3716(c)(6); 3720A(a); 31 C.F.R. §§ 285.5(c), (d); 285.4(c), (d); *see also Lockhart v. United States*, 546 U.S. 142 (2005) ("[T]he Debt Collection Improvement Act clearly makes Social Security benefits subject to offset.").

Congress similarly requires disbursing officials, such as Treasury employees, to collect such debts through offsets of federal payments.  *See* 26 U.S.C. § 6402(d); 31 U.S.C. §§ 3716(c)(1); 3720A(c); 31 C.F.R. §§ 285.2(b)(2), 285.4(c); 285.5(c)(2).  To carry out this mandate, Treasury operates the Treasury Offset Program ("TOP"), *see* 31 C.F.R. § 285.5(a)(1), through which the agency determines if payments (like federal benefits payments) made to the payee by a payment agency (such as the Social Security Administration) match with delinquent debts held by creditor agencies (such as the Department of Justice), *see id.* §§ 285.5(b), (c)(2); *see also id.* §§ 285.4(c), (d).  If there is a match, Treasury offsets the payment up to the amount of the debt and remits the collection (less any fees) to the creditor agency, with any remainder disbursed to the payee.  *See* 31 C.F.R. §§ 285.5(f)-(j), 285.4(c)-(h).

To guard against the risk of erroneous deprivation, Congress and the Executive Branch have established detailed procedural requirements that creditor agencies must comply with before submitting a debt to Treasury for offsets through TOP.  *See generally* 31 U.S.C. § 3716(a); 28 C.F.R. § 11.9.  Among other things, the creditor agency must provide the debtor: (1) written notice, at least 60 days before submitting the debt and at the debtor's most current known address, of the type and amount of

5

the claim, the intent of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor, 31 U.S.C. §§ 3716(a)(1), 3720A(b)(1); 28 C.F.R. § 11.9(c)(1); 31 C.F.R. § 285.5(d)(6)(ii)(A); 34 C.F.R. § 30.22(b); (2) an opportunity to inspect and copy records relating to the debt, 31 U.S.C. § 3716(a)(2); 28 C.F.R. § 11.9(c)(2); 31 C.F.R. § 285.5(d)(6)(ii)(B); 34 C.F.R. § 30.22(b)(3)(i); (3) a period of time in which to present evidence to the agency that the debt is not past due or legally enforceable, 31 U.S.C. §§ 3716(a)(3), 3720A(b)(2)-(3); 28 C.F.R. § 11.9(c)(3); 31 C.F.R. § 285.5(d)(6)(ii)(C); 34 C.F.R. § 30.22(b)(3)(ii); and (4) the opportunity to agree to repay the debt, 31 U.S.C. § 3716(a)(4); 28 C.F.R. § 11.9(c)(4); 31 C.F.R. § 285.5(d)(6)(ii)(D); 34 C.F.R. § 30.22(b)(3)(iii).  If, following these efforts, the debt remains past due, the creditor agency must certify to Treasury that the debt is delinquent, legally enforceable, and that the agency has provided the debtor with the required notice and opportunity for review.  31 U.S.C. §§ 3716(c)(6)(A), 3720A(a); 31 C.F.R. §§ 285.4(d); *see also id.* at § 285.5(d)(6)

Before offsetting Social Security benefit payments, the disbursing official (such as a Treasury official) is to notify the individual of the type of payment that will be offset, the identity of the creditor agency that requested the offset, and a contact within the creditor agency who will handle concerns regarding the offset.  31 C.F.R. § 285.4(f)(1).  And once an offset has been made, Treasury must issue further written notification to the individual, explaining, among other things, of the occurrence of the offset and the type and amount of payment that was offset.  31 U.S.C. § 3716(c)(7); 31 C.F.R. § 285.4(f)(2).

## <u>DISCUSSION</u>

This Court should dismiss the Complaint in its entirety for several reasons. First, Supreme Court and Third Circuit precedent foreclose Duronio's individual-capacity claims, as the case law makes clear that no *Bivens* remedy is available in this case, and, even if it were, the claims are barred by qualified immunity. Second, to the extent the Court construes the Complaint as raising any official-capacity claims, those claims would also fail. An official-capacity claim is in all practical respects a claim against the United States, but (1) the United States has not waived sovereign immunity for constitutional torts, (2) Treasury's actions in the context of administering TOP debts are statutorily immune from suit, (3) Duronio has not administratively exhausted any other claim arising from the processing of his debt, and (4) even if he had, the Complaint fails to state a constitutional violation.

## I.    The *Bivens* Claims are Subject to Dismissal

### A.    Duronio's Claims Would Require an Impermissible Extension of the *Bivens* Remedy

Fifty years ago, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court implied a constitutional damages remedy against narcotics agents for an alleged warrantless entry, search, and arrest inside a home. In the next nine years, the Court extended that remedy twice, first to sex discrimination allegations against a congressman, *Davis v. Passman*, 442 U.S. 228 (1979), then to claims against prison officials whose deliberate indifference to an inmate's emergent medical condition resulted in the inmate's death, *Carlson v. Green*, 446 U.S. 14 (1980). Since then, "however, the Supreme Court has pulled back the

reins to what appears to be a full stop and no farther." *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023). In a dozen cases over the last 43 years, the Court has "consistently rebuffed requests" to extend the *Bivens* remedy to any new context or category of defendants. *Hernández v. Mesa*, 140 S. Ct. 735, 741-43 (2020) (collecting cases); *accord Egbert v. Boule*, 596 U.S. 482, 486 (2022)

As this history shows, an individual damages remedy for constitutional torts "is not an automatic entitlement" and, "in most instances," it "is unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see Xi*, 68 F.4th at 828 ("Not all rights have remedies, even when … enshrined in the U.S. Constitution."). The availability of that remedy is a "threshold" question of law, *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018), and so the "antecedent" question in this case, as in every *Bivens* case, is whether to recognize such a remedy, *Hernández v. Mesa*, 582 U.S. 548, 553 (2017). And here, as "in most every case," the answer is "no." *Egbert*, 596 U.S. at 492.

## 1. Duronio Fails to Meet the Demanding Test to Imply a *Bivens* Remedy

There is a "well-established two-part test for implying a *Bivens* remedy." *Xi*, 68 F.4th at 833. The first question asks whether the case presents a new context and the second asks if any "special factors" indicate courts are "at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed" in that context. *Id.* (quoting *Egbert*, 596 U.S. at 492 (internal quotations omitted)). Because recognizing a *Bivens* remedy is "a disfavored judicial activity, *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), which implicates "the Constitution's separation of legislative and judicial power," *Hernández*, 140 S. Ct. at 741, the

Supreme Court cautions that "'even a single sound reason to defer to 'Congress' is enough to require a court to refrain from creating such a remedy," *Egbert*, 596 U.S. at 491 (alteration omitted). In short, if there is "any reason to think that Congress might be better equipped to create a damages remedy" to a new context or category of defendants, *id.*, the Court "may not expand *Bivens* to cover the claim," *Xi*, 68 F.4th at 834. Such is the case here.

### a. This Case Presents a New Context

At the outset, Duronio's claims "bear little resemblance" to the three Supreme Court cases to previously recognize a *Bivens* remedy and, as a result, seek to extend *Bivens* to a "new context." *Abbasi*, 582 U.S. at 140; *see Xi*, 68 F.4th at 834 ("A context may be regarded as new if it is different in a meaningful way from the three contexts where the [Supreme] Court has recognized a *Bivens* remedy, and even a modest extension is still an extension." (quotations omitted)). To begin, the individuals sued—U.S. Attorney's Office paralegals, a U.S. Attorney, and the Treasurer of the United States—represent a "new category of defendants." *Egbert*, 596 U.S. at 492; *accord Xi*, 68 F.4th at 834. In addition, Duronio's claims—which concern the processing of a restitution order through TOP offsets—implicate unique "statutory" and "other legal mandate[s]" never considered in a previous *Bivens* case. *Abbasi*, 137 S. Ct. at 1860 (recognizing "the statutory or other legal mandate under which the officer was operating" among the list of meaningful differences giving rise to "new context"). Either difference alone is enough to render the context new.

But there is more.  The Supreme Court has never extended *Bivens* to alleged procedural due process violations.  *See, e.g., Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988).  And although *Davis* involved an alleged equal protection violation, that claim concerned "federal workplace sex discrimination brought by a congressional staffer," allegations which are worlds apart from those in Duronio's complaint.  *Xi*, 68 F.4th at 835 (citing *Davis*, 442 U.S. at 230).  In short, "the new-context inquiry here is easily satisfied."  *Abbasi*, 582 U.S. at 149.

### b. Special Factors Counsel Against Recognizing a *Bivens* Remedy

At the second step, there are multiple reasons—alternative processes and special factors—that counsel against recognizing a *Bivens* remedy here.

**Alternative Remedial Scheme.**  First and foremost, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'"  *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137); *accord Xi*, 68 F.4th at 837 ("An alternative remedy is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." (quotation omitted)); *see also King v. Ponce*, No. 21-5628, 2023 WL 8253060, at *5 (D.N.J. Nov. 29, 2023) ("The existence of alternative remedial processes alone are sufficient to counsel hesitation against implying a *Bivens* remedy to Plaintiff's Fifth Amendment claims.").   Here, the Debt Collection Improvement Act and governing regulations represent a comprehensive scheme Congress and the Executive Branch have put in place to guard against the precise misconduct alleged here: erroneous deprivations in debt collection through TOP offsets.

Federal legislation requires, among other things, that any agency with a claim against a debtor must notify the debtor his or her debt is subject to offset and provide an opportunity to dispute the debt or make arrangements to pay it off before beginning collection efforts. *See supra* p. 6. Only after completing this process to ensure due process protections have been met may a creditor agency refer the debt to Treasury as eligible for collection. *Id.* Department of Justice regulations contain similar protections to ensure that individuals subject to TOP offsets have avenues to dispute the debt. *See generally* 28 C.F.R. § 11.9(a).

Through this scheme, Congress and the Executive have provided mechanisms that allow those in Duronio's shoes "some procedure to defend and make good on his [or her] position." *Wilkie*, 551 U.S. at 552. Where, as here, such processes are in place, "courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498 (quotations omitted); *see also Schweiker*, 487 U.S. at 425-28 (refusing to imply Fifth Amendment *Bivens* remedy given presence of comprehensive scheme that provided "meaningful safeguards or remedies for the rights of persons situated as" plaintiffs); *Bush v. Lucas*, 462 U.S. 367, 385 (1983) (declining to recognize Bivens remedy given "comprehensive [statutory and regulatory] scheme" in place).

**Other Alternative Processes.** Apart from the existence of a comprehensive remedial scheme, the fact that "alternative forms of judicial relief" are also available provides a separate reason to refrain from extending *Bivens*. *Abbasi*, 137 S. Ct. at 1863 (quotations omitted). As discussed further below, individuals who have properly

11

exhausted their administrative remedies pursuant to the Debt Collection Improvement Act and believe that collection efforts were arbitrary, capricious, or unconstitutional, may bring suit under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 702, 706; *see also infra* p. 20-21, *and cases cited therein* (describing exhaustion requirement before bringing claim under Debt Improvement Collection Act). Apart from an APA claim, Duronio could have (and indeed has) brought a habeas action challenging the underlying restitution order that resulted in the TOP offsets on which he now bases his putative *Bivens* claims. *See Abbasi*, 582 U.S. at 144 (finding it of "central importance" that plaintiffs could have brought habeas corpus petition to challenge misconduct at issue); *see also Werlinger*, 454 F. App'x at 73 (dismissing Duronio's habeas action concerning "unlawful modification" of his restitution order); *cf. Hernandez v. Fulwood*, No. 23-cv-46, 2023 WL 1993673, at *3 (E.D. Pa. Feb. 13, 2023) (finding availability of habeas relief counseled against extending *Bivens* to conditions-of-confinement claim).[5] In short, alternative processes exist to protect the interests allegedly at stake. These alternatives, which the Court should consider "together," not in isolation, *Chappell v. Wallace*, 462 U.S.

---

[5] In raising this potential alternative, the government in no way concedes that the Court would have jurisdiction under 28 USC § 2241 to address the restitution order (it would not). But it is irrelevant to the *Bivens* analysis whether Duronio could prevail on a habeas claim—or any alternative process for that matter. *See Schweiker*, 487 U.S. at 421-22 (declining to authorize *Bivens* remedy given alternative process even where that process provided no relief at all to the particular plaintiff); *see also Egbert*, 596 U.S. at 497-98 (existence of alternative process counsels against *Bivens* remedy regardless of whether the process gives a plaintiff "rights to participation or appeal," and "even if a court independently concludes" that the existing process is "not as effective as an individual damages remedy." (quotations omitted)).

296, 304 (1983), foreclose the *Bivens* remedy Duronio seeks. *See Xi*, 68 F.4th at 837 (considering alternative processes in aggregate); *see also Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 919-21 (D.C. Cir. 2018) (rejecting *Bivens* remedy given "constellation of statutes and regulations governing" conduct at issue, without "pars[ing] the specific applicability of this web of [alternative] remedies" but instead noting "the spectrum of remedies they provide.").

**Legislative Action.** Still another reason to pause before implying a novel damages remedy is the "possibility" that the absence of a statutory remedy in this context "might be more than mere oversight." *Abbasi*, 137 S. Ct. at 1862. There has been, as outlined above, intense legislative attention paid to issues of federal debt collection. The same is true for matters of restitution. Apart from the Debt Collection Improvement Act of 1996 discussed above, which followed the Debt Collection Act of 1982, Congress has repeatedly emphasized the importance of restitution—mandating by statute that the federal government recover restitution for crime victims to the fullest extent, and within the shortest time available, to make victims whole. *See, e.g.,* 18 U.S.C. §§ 3612(c); 3613(a), (c), and (f); 3771(a)(6), (b)(1), and (d); 3664. These overlapping statutory schemes form the context in which Duronio asks this Court to create a *Bivens* remedy. Yet notably missing from this "pattern of congressional action" is the type of individual damages remedy that he seeks. *See Hernández*, 140 S. Ct. at 749. Where, as here, Congress has legislated extensively in a given context (as is the case with respect to TOP offsets and restitution), it becomes "much more

difficult to believe that congressional inaction"—the failure to create an individual damages remedy— "was inadvertent." *Abbasi*, 137 S. Ct. at 1862.

**Practical Consequences.** As the Supreme Court recognizes, "any new *Bivens* action entails substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 596 U.S. at 499 (quotations omitted). Creating a novel damages remedy for injuries allegedly arising from the processing of restitution orders, or TOP offsets, could threaten to create an "onslaught of *Bivens* actions." *Wilkie*, 551 U.S. at 562. And the "burden and demand" in defending such claims could, in turn, hinder those involved in the administration of these programs "from devoting the time and effort required for the proper discharge of their duties," *Abbasi*, 137 S. Ct. at 1860. In the end, Congress is "better suited to weigh the costs and benefits of allowing a damages action to proceed" in this context. *Egbert*, 596 U.S. at 496 (quotations omitted). This Court should dismiss the *Bivens* claims.

## B. Qualified Immunity is an Independent Bar to Duronio's Claims

Even assuming a *Bivens* remedy existed, Duronio's claims against the individual defendants are nevertheless subject to dismissal based on qualified immunity. That doctrine shields a public official from suit unless his or her conduct, as alleged, violated a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To avoid dismissal on grounds of qualified immunity, Duronio must allege, as to each individual defendant, sufficient facts to (1) make out a constitutional violation, which

14

(2) was clearly established at the time.  *See District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quotations omitted).  Duronio does neither.

As an initial matter, "[i]t is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 71 (3d Cir. 2011).  So "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Velazquez v. Zickefoose*, No. 11-cv-2459, 2014 WL 6611058, at *5 (D.N.J. Nov. 21, 2014) ("Plaintiff must assert facts personally implicating *each* named Defendant in the events that amount to plausible constitutional wrongs." (emphasis in original)).  This Duronio fails to do.  Indeed, the Complaint lacks any allegations against United States Attorney Sellinger, Treasurer Malerba, Supervisory Paralegal Specialist Brown, or Paralegal Specialist Parker in the first place (never mind allegations that explain how any of them personally violated the Fifth Amendment).  And to the extent Duronio seeks to hold the United States Attorney or Treasurer personally liable under *Bivens* based on the acts of subordinates, well-established precedent forecloses that notion.  *See Iqbal*, 556 U.S. at 672 ("[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").[6]  The same goes with Duronio's blanket reference to the actions of "Clerks

---

[6] The officials who manage the TOP, moreover, are not subordinates of the Treasurer, and she has no oversight or other involvement in the debt collection functions at issue.  Rather, she supervises the United States Mint, the Bureau of

working in the Financial Litigation Unit." Compl., at 4; *see, e.g., Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (explaining that "to overcome defendants' assertions of qualified immunity, plaintiffs … must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations."); *accord Argueta*, 643 F.3d at 71.

Separately, and beyond the failure to plead personal involvement, the Complaint is also devoid of any non-conclusory allegations that give rise to a constitutional violation "that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see Argueta*, 643 F.3d at 72 (recognizing "plausibility standard …. demand[s] more than a sheer possibility that the defendant acted unlawfully.").

With respect to any procedural due process claim, the quintessential requirements of due process are "notice and an opportunity to be heard." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). Here, Duronio plainly had notice of the Restitution and Forfeiture Order entered with his conviction. *See United States v. Duronio*, No. 02-cr-933 (JLL), ECF No. 135, at 5. He also received various notices (attached to the Complaint) related to the restitution debt owed and Treasury offset giving rise to his claims. *See* ECF No. 1-2, at 1 (attaching a Department of Justice Notice of Lien); *id.* at 5-6 (attaching notices from Treasury regarding the Social Security offsets). And he appears to have had opportunities to be heard regarding any grievances related to his restitution payments. He alleges

---

Engraving & Printing, and Treasury's Office of Tribal and Native Affairs. *See* https://home.treasury.gov/about/offices/treasurer (last visited Dec. 8, 2023)

that he complained to unspecified Department of Justice staff about the debt, and at one time even successfully negotiated the monthly payment down to a lower rate. *See Compl.*, at 4-5. This cannot give rise to a plausible procedural due process violation.

The equal protection claim is similarly deficient. The Equal Protection Clause of the Fifth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). But Duronio does not allege that any individual defendant treated him differently from others enrolled in TOP or who had to satisfy a restitution-related debt. And to the extent Duronio is trying to make an equal protection claim based on selective enforcement of TOP, the claim fails because he does not plausibly allege that any individual defendant treated him differently "on account of race, religion, or national origin." *Xi*, 68 F.4th at 840 (quoting *Iqbal*, 556 U.S. at 677).

Finally, even if the Court were to conclude that Duronio plausibly stated a constitutional violation under the Due Process or Equal Protection Clause, the individual defendants would still be entitled to qualified immunity as Duronio cannot meet the "demanding standard" of alleging a "clearly established" violation. *Wesby*, 583 U.S. at 63; *see HIRA Educational Servs. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021) ("To be clearly established, a right must be so apparent that every reasonable official would understand that what he [or she] is doing is unlawful," and the right "must be defined with a high degree of specificity" in that "[t]he legal principle established in a precedential case must clearly prohibit the official's conduct in the particular circumstances before him [or her]." (quotations omitted)).

## II.    Any Official-Capacity Claims Should Also be Dismissed

As discussed above, Duronio lacks any viable *Bivens* claims in this case.  To the extent that the Complaint is also construed as attempting to assert official-capacity claims—whether for damages or equitable relief—those claims are subject to dismissal for the various reasons below.

### A. The United States Has Not Waived Sovereign Immunity for Constitutional Torts

Any claims against defendants in their "official" capacities seeking damages for purported constitutional violations are barred by sovereign immunity.  "An action against government officials in their official capacities constitutes an action against the United States," and constitutional tort claims asserted "against the United States are barred by sovereign immunity," *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir.) (per curiam), because the United States has not waived sovereign immunity for this type of claim, *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).  *See Balice v. United States*, 763 F. App'x 154, 156 (3d Cir. 2019) (dismissing constitutional damages claims against Attorney General and IRS employees in official capacities as "[n]either the United States nor its agencies have waived sovereign immunity for constitutional claims.").

### B. The Court Should Dismiss Any Official-Capacity Claims Seeking Equitable Relief

Duronio also requests various forms of equitable relief, including an order to "return the monies taken from [him] by the Treasury." Compl., at 7.  To the extent

the Court construes him as seeking such relief against any defendant in his or her official capacity, those claims fail for the reasons below.[7]

### 1. Any Claims Based on Treasury's Role in Administering Duronio's Debt Are Barred by 31 U.S.C. § 3716

Duronio cannot sustain a claim for equitable relief based on Treasury's processing of the restitution order because any such claim is barred under 31 U.S.C. § 3716(c)(2)(A). As the provision states, "[n]either the disbursing official nor the payment certifying agency shall be liable … for the amount of the administrative offset on the basis that the underlying obligation, represented by the payment before the administrative offset was taken, was not satisfied." *Id.* In administering the TOP, moreover, Treasury has "no statutory authority over the debt, nor any role in determining whether or not the debt [is] valid or whether [an individual]'s benefit payment should be offset." *Johnson v. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008). Instead, "Treasury is, by law, required to offset these payments," and so the offsets amount to a "non-discretionary function by Treasury, a duty which Treasury cannot avoid performing." *Tavares v. United States,* No. 13-cv-1654, 2014

---

[7] Any claims for equitable relief against defendants in their individual capacities are also not viable. Courts of appeal around the country uniformly hold that government officials cannot be sued personally for equitable relief, and the only possible remedy in a *Bivens* action is an award of monetary damages against the employee personally. *See Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (collecting cases); *Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *Segal v. C.I.R.*, 177 F. App'x 29, 1 (11th Cir. 2006); *Community Mental Health Servs. v. Mental Health and Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

WL 4351532, at *7 (M.D. Pa. Sept. 2, 2014); *accord Johnson*, 300 F. App'x at 862-63; *see also* 31 U.S.C. § 3716(c)(1)(a) (providing Treasury "shall offset" payment that agency has certified to it); 31 C.F.R. § 285.4(c) (Treasury "shall offset payments to satisfy, in whole or in part, debts owed by the payee").

For these reasons, and given the purely administrative, non-discretionary role Treasury plays in TOP, numerous courts have dismissed claims like Duronio's against Treasury and its officials, challenging the processing of offsets. *See Johnson*, 300 F. App'x at 862-63; *see also Chambers v. Berryhill*, 2020 WL 5099829, at *11 (N.D. Tex. Aug. 12, 2020); *United States v. $7,877.61 United States Currency*, 2016 WL 5078380, at *5 (W.D.N.Y. Sept. 20, 2016); *Hughes v. United States*, No. 14-998, 2015 WL 4477961, at *3 (E.D. La. July 22, 2015); *Tavares*, 2014 WL 4351532, at *7; *Lepelletier v. U.S. Dep't of Educ.*, No. 09-1119, 2009 WL 4840153, at *1 (D.D.C. Dec. 14, 2009). The same result should follow here.

## 2. Any Claims Based on the Department of Justice's Role in Administering Duronio's Debt Likewise Fail

To the extent the Court construes Duronio as asserting official-capacity claims (*i.e.*, claims against the United States) seeking equitable relief based on the actions of the Department of Justice in processing the restitution order, these claims are subject to dismissal as well. Two basic reasons compel this conclusion: (1) Duronio has not alleged exhaustion of his administrative remedies to pursue such a claim; and, in any event, (2) he fails to state a constitutional violation.

### a. Duronio Failed to Exhaust his Administrative Remedies

Under the well-established doctrine of administrative exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 584 U.S. 81, 88-89 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. And, as discussed previously, the Debt Collection Improvement Act contains detailed procedural protections that give debtors opportunities for administrative review before an offset is applied. *See supra* p. 4-6.

Here, Duronio does not claim that he attempted to seek administrative review before bringing this action, and so he has not alleged administrative exhaustion. *See Walker v. United States*, No. 3:13-cv-205, 2014 WL 2505669, at *5 (M.D. Pa. June 3, 2014) (recognizing that debtor must exhaust administrative remedies by utilizing agency review process concerning TOP offset before seeking judicial relief); *see also Hurd v. United States Postal Serv.*, No. 20-cv-394, 2021 WL 1721637, at *4 (D. Neb. Apr. 30, 2021) ("Debtors referred to the Treasury's offset program must exhaust administrative remedies before seeking redress in the courts."); *United States v. Beulke*, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012) ("If the Department of Justice referred Beulke to the TOP, he must exhaust administrative remedies before seeking redress in court."); *United States v. Harrison*, No. 94-cr-428, 2007 WL 2332662, at *2 (N.D. Tex. Aug. 16, 2007) ("To the extent the court even has the authority to interfere with the government's ability to collect the restitution debt through the TOP, it

21

should decline to exercise that authority until defendant presents his claim to the appropriate federal agency."). For that reason alone, his claim should be dismissed. *See Spencer v. GSA*, No. 15-4813, 2015 WL 5565812, at *2-3 (D.N.J. Sept. 21, 2015) (dismissing challenge to collection of debt through TOP when plaintiff failed to allege exhaustion of administrative remedies).

### b. Failure to Allege a Constitutional Violation

Even assuming Duronio had properly exhausted the administrative process, any official-capacity claims seeking equitable relief for alleged Fifth Amendment violations would still fail.

As discussed above, "the statute and regulations creating [TOP] provide ample due process protections" designed to ensure that individuals are "not subject to an erroneous and improper offset." *Cleveland v. United States*, No. 13-cv-281, 2020 WL 3976940, at *4 (M.D. Pa. July 14, 2020). Duronio's failure to allege any deviation from these procedures, which courts have repeatedly held satisfy due process, dooms any procedural due process claim. *See Lima v. Dep't of Educ.*, 374 F.3d 1122, 1128 (9th Cir. 2020) (holding agency did not violate Due Process Clause where it "provided Plaintiff with notice of the debt, of Defendant's intention to seek a Treasury offset against Plaintiff's Social Security benefits, and the means by which Plaintiff could respond"); *Omegbu v. Dep't of Treasury*, 118 F. App'x 989, 991 (7th Cir. 2004) (finding agencies did not violate due process where defendants "complied with the procedures set forth in [the DCIA]," "sent written notice to [the debtor's] last known address and

provided him the opportunity to be heard before certifying his account for offset," and "sent him a letter notifying him that his benefits would be reduced").[8]

To succeed on a claim alleging an equal protection violation, Duronio "must show that the Government has treated [him] differently from a similarly situated party and that the Government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Stradford v. Sec'y Penn. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022). But here, as discussed above, Duronio does not allege that Treasury or the Department of Justice treated him differently than any other person with a restitution order. Indeed, Duronio does not identify any other individuals that he alleges received more favorable treatment. And the Government's reason for enrolling Duronio in the TOP appears in the Complaint itself: he "quit paying" restitution. Compl., at 5. Offsetting Social Security payments to pay down Duronio's delinquent debt is rationally related to the Government's legitimate interest in collecting restitution and does not give rise to any equal protection violation. *See*

---

[8] *See also Blanchette v. Devos*, 2020 WL 5642275, at *9 (D.D.C. Sept. 22. 2020) (plaintiff "failed to state a plausible due process claim" regarding notice provided under the DCIA, where plaintiff "[did] not allege that the notice failed to adhere to the requirements outlined by statute or Treasury's regulations"); *Hackworth v. Kansas City Veterans Admin. Med. Ctr.*, 2015 WL 506245, at *6 (W.D. Mo. Feb. 6, 2015) ("[E]very decision reviewed by this Court considering the issue presented has found that the TOP statute satisfies procedural due process under the Fifth Amendment"); *Shilkas v. Dep't of Educ.*, 2013 WL 2149752 (D. Md. May 15, 2013) ("[C]ompliance with TOP statutes and regulations governing offsets satisfies procedural due process"); *McCarty v. Astrue*, 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007) (holding no due process violation where debtor was sent, under the DCIA, "notice of the amount and type of debt he owed, notice of the Treasury's intention to collect the debt by offsetting his EAJA award, and the rights available to him to challenge the administrative offset").

*Brian B. ex rel. Lois B. v. Com. Of Pennsylvania Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000) (recognizing that "rational basis review ordinarily" applies to "economic legislation"); *see also Silbey v. Dep't of Educ.*, 913 F. Supp. 1181, 1189 (N.D. Ill. 1995) ("[T]he collection of funds owed to the federal government is a legitimate purpose" and "salary offsets—a remedy particularly available when deducting from the federal government's own paychecks—constitute a rational manner to effectuate the government purpose."); *see also Maehr v. Dep't of State*, 2020 WL 967754, at *6 (D. Colo. Feb. 28, 2020) ("collection of substantial delinquent tax debts is . . . a legitimate [government] interest").

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to dismiss the Complaint in its entirety.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:   s/ David Inkeles
DAVID INKELES
Assistant United States Attorney

Dated:  December 11, 2023