<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROGER F. DURONIO, *Plaintiff*, v. KELLY PARKER, *et al.*, *Defendants*. | Civil Action No. 23-1446 (JKS)(SDA) **OPINION** August 22, 2024 |

**SEMPER**, District Judge.

This matter concerns the enforcement of a restitution order against *pro se* Plaintiff Roger F. Duronio ("Plaintiff" or "Duronio") and the Department of Justice's enrollment of Duronio into the Treasury Offset Program ("TOP"). Plaintiff alleges due process and equal protection violations, claiming that the United States Attorney for the District of New Jersey, Philip R. Sellinger, Supervisory Paralegal Specialist Robin Brown and Paralegal Specialist Kelly Parker of the U.S. Attorney's Office Financial Litigation Unit, and the Treasurer of the United States, Marilyn Malerba (collectively "Defendants") arbitrarily altered his restitution payments and wrongfully withheld his Social Security benefits.[1] Currently pending before the Court is Defendants' motion

---

[1] President Joseph Biden ("Biden") and Attorney General Merrick Garland ("Garland") are named solely in the caption of the Complaint. They are not included in the numbered list of defendants, see (ECF 1, Compl. at 2-3), and the body of the Complaint does not include any allegations against them. A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Galicki v. New Jersey,* No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015*)*. When several defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id*. Plaintiff's Complaint makes no allegations as it relates to Garland or Biden whatsoever. Due to the absence of allegations regarding Garland and Biden, the Complaint fails to state a claim against those Defendants entirely. As such, the Court dismisses Garland and Biden from this action.

to dismiss the Complaint. (ECF 9.) Plaintiff filed a brief in opposition to the motion, (ECF 11), to which Defendants replied. (ECF 12.) The Court reviewed the parties' submissions,[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

## I.   BACKGROUND[3]

On July 19, 2006, a jury found Duronio guilty on securities and computer fraud charges.[4] The Restitution and Forfeiture Order required Duronio to begin restitution payments "immediately," and "[i]n the event the entire restitution is not paid prior to the commencement of [supervised release]," to make monthly payments of at least $200 per month beginning 30 days after his release from prison. (Docket No. 02-cr-933, ECF No. 135, at 5.) Duronio's conviction was affirmed on appeal. *See United States v. Duronio*, No. 06-5116, 2009 WL 294377 (3d Cir. Feb. 9, 2009). Courts have repeatedly rejected his applications for post-conviction relief.[5]

On March 13, 2023, Duronio filed the instant *pro se* action. (ECF 1, Complaint ("Compl.").) Plaintiff names two employees from the U.S. Attorney's Office for the District of New Jersey's Financial Litigation Unit as defendants: Paralegal Specialist Kelly Parker ("Parker") and Supervisory Paralegal Specialist Robin Brown ("Brown"), along with the current United States Attorney, Philip R. Sellinger ("Sellinger"), and the Treasurer of the United States, Marilyn

---

[2] The Court refers to Defendants' brief in support of their motion as "Defs. Br." (ECF 9-1); Plaintiff's opposition as "Pl. Opp." (ECF 11); and Defendants' reply as "Defs. Reply" (ECF 12).

[3] The allegations in the Complaint must be accepted as true solely for purposes of this motion to dismiss, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court also relies on documents integral to or relied upon by the Complaint and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[4] *See United States v. Duronio*, Docket No. 02-cr-933, ECF No. 114-15. On December 13, 2006, Judge Greenaway sentenced Duronio to 97 months in prison, followed by three years of supervised release, and ordered Duronio to pay $3,162,376.00 in restitution. (*Id.* at ECF Nos. 133, 135.)

[5] *See Duronio v. United States*, No. 10-1574, 2012 WL 78201 (D.N.J. Jan. 10, 2012); *see also Duronio v. Werlinger*, No. 09-cv-289, 2011 WL 8582709 (W.D. Pa. Feb. 22, 2011), *report and recommendation adopted Duronio v. Yost*, 09-cv-289, ECF No. 11 (Mar. 4, 2011), *aff'd Duronio v. Werlinger*, 56 F. App'x 71 (3d Cir. 2011).

2

Malerba ("Malerba"). According to Duronio, Parker and Brown, along with Malerba, "arbitrarily altered" his restitution payments, made (unspecified) threats in "retaliation for non-payment, [and] directed the [U.S. Department of the Treasury to] take money from [his] Social Security payments" without a hearing. (*Id*. at 4-5.) Plaintiff claims he was denied "due process and equal protection," and requests monetary and equitable relief. (*Id*.) Defendants subsequently filed the instant motion, seeking to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

II.     STANDARDS OF REVIEW

   A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must

accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."[6] *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).[7]

### III.  ANALYSIS

#### A.  Background of Treasury Offset Program

The Debt Collection Improvement Act requires federal agencies to "try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency." 31 U.S.C. § 3711(a)(1). The statute defines the term "claim" to include "any amount of funds or property determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency." *Id*. at § 3701(b)(1). Federal agencies, like the Department of Justice, are statutorily authorized (subject to certain procedural requirements, discussed below) to collect delinquent debts owed through administrative offsets.[8]

The Debt Collection Improvement Act further mandates that federal agencies "shall" refer delinquent nontax debts to the U.S. Department of the Treasury ("Treasury") for collection through

---

[6] Because Plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally and hold them to a less stringent standard than those filed by attorneys, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), but the "Court need not . . . credit a *pro se* plaintiff's bald assertions or legal conclusions." *Mestman v. Escandon*, No. 14-3880, 2014 WL 11398143, at *1 (D.N.J. June 25, 2014) (internal citations and quotations omitted). Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "Thus, a *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019).

[7] In addition to these pleading rules, a complaint must satisfy Federal Rule of Civil Procedure 8(a), which states that a complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

[8] *See* 31 U.S.C. §§ 3716(a), 3720A(a)-(b); 31 C.F.R. part 285, subpart A; *see also* 28 C.F.R. § 11.9(a) (regulations governing DOJ-specific offsets).

offsets of federal and state payments (including, as relevant here, Social Security benefits).[9] Congress similarly requires disbursing officials, such as Treasury employees, to collect such debts through offsets of federal payments.[10] To carry out this mandate, Treasury operates the Treasury Offset Program ("TOP"), *see* 31 C.F.R. § 285.5(a)(1), through which the agency determines if payments (like federal benefits payments) made to the payee by a payment agency (such as the Social Security Administration) match with delinquent debts held by creditor agencies (such as the Department of Justice). *See id*. §§ 285.5(b), (c)(2); *see also id*. §§ 285.4(c), (d). If there is a match, Treasury offsets the payment up to the amount of the debt and remits the collection (less any fees) to the creditor agency, with any remainder disbursed to the payee. *See id.* §§ 285.5(f)-(j), 285.4(c)-(h).

Congress and the Executive Branch have established detailed procedural requirements that creditor agencies must comply with before submitting a debt to Treasury for offsets through TOP. *See generally* 31 U.S.C. § 3716(a); 28 C.F.R. § 11.9. Among other things, the creditor agency must provide the debtor: (1) written notice, at least 60 days before submitting the debt and at the debtor's most current known address, of the type and amount of the claim, the intent of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor; (2) an opportunity to inspect and copy records relating to the debt; (3) a period of time in which to present evidence to the agency that the debt is not past due or legally enforceable; and (4) the opportunity to agree to repay the debt.[11] If, following these efforts, the debt remains past due, the creditor agency must certify to Treasury that the debt is delinquent, legally enforceable, and that the agency has provided

---

[9] *See* 31 U.S.C. §§ 3716(c)(6); 3720A(a); 31 C.F.R. §§ 285.5(c), (d); 285.4(c), (d); *see also Lockhart v. United States*, 546 U.S. 142, 145 (2005) ("[T]he Debt Collection Improvement Act clearly makes Social Security benefits subject to offset.").

[10] *See* 26 U.S.C. § 6402(d); 31 U.S.C. §§ 3716(c)(1); 3720A(c); 31 C.F.R. §§ 285.2(b)(2), 285.4(c); 285.5(c)(2).

[11] *See* 31 U.S.C. §§ 3716(a)(1)-(4), 3720A(b)(1)-(3); 28 C.F.R. § 11.9(c)(1)-(4); 31 C.F.R. § 285.5(d)(6)(ii)(A)-(D); 34 C.F.R. § 30.22(b).

the debtor with the required notice and opportunity for review.[12] Before offsetting Social Security benefit payments, the disbursing official (such as a Treasury official) is to notify the individual of the type of payment that will be offset, the identity of the creditor agency that requested the offset, and a contact within the creditor agency who will handle concerns regarding the offset. 31 C.F.R. § 285.4(f)(1). Once an offset has been made, Treasury must issue further written notification to the individual, explaining, among other things, of the occurrence of the offset and the type and amount of payment that was offset. 31 U.S.C. § 3716(c)(7); 31 C.F.R. § 285.4(f)(2).

### B. *Bivens* Claims

In liberally construing Plaintiff's Complaint, it appears Plaintiff asserts *Bivens* claims against the Defendants based upon the restitution payments Plaintiff was ordered to pay as a result of his 2006 conviction. (ECF 1, Compl. at 4.)

A *Bivens* claim is a "private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397 (1971)). The Supreme Court, however, has only recognized three scenarios in which a *Bivens* claim may apply: an unconstitutional search and seizure under the Fourth Amendment, *Bivens,* 403 U.S. at 389; a Fifth Amendment due process clause violation, *Davis v. Passman*, 442 U.S. 228 (1979); and a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14 (1980). Since *Carlson*, the Supreme Court has been reluctant to increase the scope of *Bivens*.

The Supreme Court stated that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule*, 142 S. Ct. 1793, 1800 (2022).

---

[12] 31 U.S.C. §§ 3716(c)(6)(A), 3720A(a); 31 C.F.R. §§ 285.4(d); *see also id*. at § 285.5(d)(6).

6

Indeed, an individual damages remedy for constitutional torts "is not an automatic entitlement" and, "in most instances," it "is unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see Xi v. Haugen*, 68 F.4th 824, 828 (3d Cir. 2023) ("Not all rights have remedies, even when . . . enshrined in the U.S. Constitution."). The availability of that remedy is a "threshold" question of law, *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018), and so the "antecedent" question in this case, as in every *Bivens* case, is whether to recognize such a remedy, *Hernández v. Mesa*, 582 U.S. 548, 553 (2017).

### 1. Two-Part *Bivens* Test

There is a "well-established two-part test for implying a *Bivens* remedy." *Xi*, 68 F.4th at 833. The first question asks whether the case presents a new context and the second asks if any "special factors" indicate courts are "at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed" in that context. *Id*. (quoting *Egbert*, 596 U.S. at 492 (internal quotations omitted)). If there is "any reason to think that Congress might be better equipped to create a damages remedy" to a new context or category of defendants, *Egbert*, 596 U.S. at 493, the Court "may not expand *Bivens* to cover the claim," *Xi*, 68 F.4th at 834.

Given the Supreme Court's clear guidance, this Court declines to expand *Bivens* to encompass Plaintiff's claims at issue. Specifically, Plaintiff's claims "bear little resemblance" to the three Supreme Court cases to previously recognize a *Bivens* remedy and, as a result, seek to extend *Bivens* to a "new context."[13] To begin, the individuals sued—U.S. Attorney's Office paralegals, a U.S. Attorney, and the Treasurer of the United States—represent a "new category of defendants." *Egbert*, 596 U.S. at 492; *accord Xi*, 68 F.4th at 834. In addition, Plaintiff's claims,

---

[13] *Abbasi*, 582 U.S. at 140; *see Xi*, 68 F.4th at 834 ("A context may be regarded as new if it is different in a meaningful way from the three contexts where the [Supreme] Court has recognized a *Bivens* remedy, and even a modest extension is still an extension." (quotations omitted)).

which concern the processing of a restitution order through TOP offsets, implicate unique "statutory" and "other legal mandate[s]" never considered in a previous *Bivens* case. *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017) (recognizing "the statutory or other legal mandate under which the officer was operating" among the list of meaningful differences giving rise to "new context"). Furthermore, the Supreme Court has never extended *Bivens* to alleged procedural due process violations. *See, e.g., Schweiker v. Chilicky,* 487 U.S. 412, 414 (1988). Although Davis involved an alleged equal protection violation, that claim concerned "federal workplace sex discrimination brought by a congressional staffer," allegations which are entirely inapposite from those in Plaintiff's complaint. *Xi*, 68 F.4th at 835 (citing *Davis*, 442 U.S. at 230). Based on the foregoing, "the new-context inquiry here is easily satisfied." *Abbasi*, 582 U.S. at 149.

At the second step, Defendants point to multiple reasons—alternative processes and special factors—that counsel against recognizing a *Bivens* remedy here. The Court agrees with Defendants' reasoning. "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137); *accord Xi*, 68 F.4th at 837 ("An alternative remedy is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." (quotation omitted)); *see also King v. Ponce*, No. 21-5628, 2023 WL 8253060, at *5 (D.N.J. Nov. 29, 2023) ("The existence of alternative remedial processes alone are sufficient to counsel hesitation against implying a *Bivens* remedy to Plaintiff's Fifth Amendment claims."). Here, the Debt Collection Improvement Act and governing regulations represent a comprehensive scheme Congress and the Executive Branch have put in place to guard against the precise misconduct alleged here: erroneous deprivations in debt collection through TOP offsets. Federal legislation requires that any agency with a claim against a debtor must notify the debtor his or her debt is

8

subject to offset and provide an opportunity to dispute the debt or make arrangements to pay it off before beginning collection efforts.[14] Indeed, Congress and the executive have provided mechanisms through this framework that allow those in Plaintiff's shoes "some procedure to defend and make good on his [or her] position." *Wilkie*, 551 U.S. at 552. Where, as here, such processes are in place, "courts cannot second-guess that calibration by superimposing a *Bivens* remedy."[15] *Egbert*, 596 U.S. at 498 (quotations omitted).

In addition to the alternative remedial scheme outlined above, Plaintiff's *Bivens* claims are further undercut based upon the alternative forms of judicial relief available,[16] the seemingly intentional congressional inaction as it relates to an individual damages remedy,[17] and the potential "substantial social costs" associated with "any new *Bivens* action."[18] *Egbert*, 596 U.S. at 499.

---

[14] *See* 31 U.S.C. § 3716(a)(4); 28 C.F.R. § 11.9(c)(4); 31 C.F.R. § 285.5(d)(6)(ii)(D); 34 C.F.R. § 30.22(b)(3)(iii).

[15] *See also Schweiker*, 487 U.S. at 425-28 (refusing to imply Fifth Amendment *Bivens* remedy given presence of comprehensive scheme that provided "meaningful safeguards or remedies for the rights of persons situated as" plaintiffs); *Bush v. Lucas*, 462 U.S. 367, 385 (1983) (declining to recognize *Bivens* remedy given "comprehensive [statutory and regulatory] scheme" in place).

[16] Individuals who have properly exhausted their administrative remedies pursuant to the Debt Collection Improvement Act and believe that collection efforts were arbitrary, capricious, or unconstitutional, may bring suit under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 702, 706. Apart from an APA claim, Plaintiff could have (and indeed has) brought a habeas action challenging the underlying restitution order that resulted in the TOP offsets on which he now bases his putative *Bivens* claims. *See Abbasi*, 582 U.S. at 144 (finding it of "central importance" that plaintiffs could have brought habeas corpus petition to challenge misconduct at issue); *see also Werlinger*, 454 F. App'x at 73 (dismissing Duronio's habeas action concerning "unlawful modification" of his restitution order); *cf. Hernandez v. Fulwood*, No. 23-cv-46, 2023 WL 1993673, at *3 (E.D. Pa. Feb. 13, 2023) (finding availability of habeas relief counseled against extending *Bivens* to conditions-of-confinement claim).

[17] Notably missing from this "pattern of congressional action" is the type of individual damages remedy that he seeks. *See Hernandez v. Mesa*, 589 U.S. 93, 112 (U.S. 2020). Where, as here, Congress has legislated extensively in a given context (as is the case with respect to TOP offsets and restitution), it becomes "much more difficult to believe that congressional inaction"—the failure to create an individual damages remedy—"was inadvertent." *Abbasi*, 582 U.S. at 143-44.

[18] As the Supreme Court recognizes, "any new *Bivens* action entails substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 596 U.S. at 499 (quotations omitted). Creating a novel damages remedy for injuries allegedly arising from the processing of restitution orders, or TOP offsets, could threaten to create an "onslaught of *Bivens* actions." *Wilkie*, 551 U.S. at 562. And the "burden and demand" in defending such claims could, in turn, hinder those involved in the administration of these programs "from devoting the time and effort required for the proper discharge of their duties," *Abbasi*, 551 U.S. at 140.

Based upon the foregoing, Congress is "better suited to weigh the costs and benefits of allowing a damages action to proceed" in this context. *Egbert*, 596 U.S. at 496 (quotations omitted). Plaintiff, therefore, fails to properly state a *Bivens* claim, and his Complaint is dismissed.

### C. Dismissal with Prejudice

Defendants contend the Court should dismiss Plaintiff's claims with prejudice because even if Plaintiff was able to replead his *Bivens* claims, they are further barred by some combination of qualified and/or sovereign immunity, such that Defendants are immune from suit. (ECF 9-1, Defs. Br. at 14-17.) Further, Defendants assert that any claims based on the Treasury's role in administering Plaintiff's debt are barred by 31 U.S.C. § 3716.[19] Finally, Defendants assert that Plaintiff has failed to exhaust his administrative remedies and he has failed to allege a constitutional violation.[20] The Court agrees.

When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with or without prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002). As discussed, a party may not amend a complaint that is dismissed with prejudice because a dismissal with prejudice operates as an adjudication on the merits and bars a later action against the same defendants or their privies. *Gambocz v. Yelencsics*, 468 F.2d 837, 840

---

[19] "Neither the disbursing official nor the payment certifying agency shall be liable … for the amount of the administrative offset on the basis that the underlying obligation, represented by the payment before the administrative offset was taken, was not satisfied." 31 U.S.C. § 3716(c)(2)(A). The Treasury administration of the TOP has "no statutory authority over the debt, nor any role in determining whether or not the debt [is] valid or whether [an individual]'s benefit payment should be offset." *Johnson v. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008). Instead, "Treasury is, by law, required to offset these payments," and so the offsets amount to a "non-discretionary function by Treasury, a duty which Treasury cannot avoid performing." *Tavares v. United States*, No. 13-cv-1654, 2014 WL 4351532, at *7 (M.D. Pa. Sept. 2, 2014); *accord Johnson*, 300 F. App'x at 862-63; *see also* 31 U.S.C. § 3716(c)(1)(a) (providing Treasury "shall offset" payment that agency has certified to it); 31 C.F.R. § 285.4(c) (Treasury "shall offset payments to satisfy, in whole or in part, debts owed by the payee").

[20] To succeed on a claim alleging an equal protection violation, Duronio "must show that the Government has treated [him] differently from a similarly situated party and that the Government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Stradford v. Sec'y Penn. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022). Plaintiff does not allege that Treasury or the Department of Justice treated him differently than any other person with a restitution order and Plaintiff does not identify any other individuals that he alleges received more favorable treatment. (ECF 9-1, Defs. Br. at 23.)

(3d Cir. 1972). The district court may dismiss with prejudice, thus denying leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).

Given Plaintiff's claims, the Court determines that even if Plaintiff were to plead new facts, he would be unable to avoid the various immunities and bars to suit extensively briefed by Defendants. As a result, the Court will not provide Plaintiff with leave to file an amended complaint as the Court concludes that any amendment would be futile. As a result, Plaintiff's claims are dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, (ECF 9), is **GRANTED**. An appropriate Order accompanies this Opinion.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Stacey D. Adams, U.S.M.J.
　　　Parties